```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
YVONNE JOHNSON,

        Plaintiff,
                                           MEMORANDUM AND ORDER
     v.
                                           19-cv-1576(KAM)
COMMISSIONER OF SOCIAL SECURITY,

        Defendant.
----------------------------------X
```
**KIYO A. MATSUMOTO, United States District Judge:**

Pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), Yvonne Johnson ("plaintiff") appeals the final decision of the Commissioner of Social Security ("defendant"), which found that plaintiff was not eligible for disability insurance benefits ("DIB") under Title II of the Social Security Act ("the Act") and that plaintiff was not eligible for Supplemental Security Income ("SSI") disability benefits under Title XVI of the Act, on the basis that plaintiff is not disabled within the meaning of the Act. Plaintiff alleges that she is disabled under the Act and is thus entitled to receive the aforementioned benefits. Plaintiff is alleging disability since June 1, 2014. (ECF No. 20, Administrative Transcript ("Tr.") at 10.)

Presently before the court is plaintiff's memorandum of law in support of plaintiff's motion for judgment on the pleadings (ECF No. 24, Plaintiff's Memorandum of Law in Support

1

of Plaintiff's Motion for Judgment on the Pleadings ("Pl. Mem."), defendant's cross-motion for judgment on the pleadings (ECF No. 23, Memorandum of Law in Support of Defendant's Motion for Judgment on the Pleadings ("Def. Mem."), and plaintiff's reply in support of motion for judgment on the pleadings (ECF No. 18, "Pl. Reply".)  For the reasons stated below, plaintiff's motion is GRANTED, defendant's motion is DENIED, and the case is remanded for further proceedings consistent with this Memorandum and Order.

## BACKGROUND

The parties have submitted a joint stipulation of facts detailing plaintiff's medical history and the administrative hearing testimony, which the court incorporates by reference.  (*See generally* ECF No. 19, Joint Stipulation of Facts ("Stip.").)  On April 3, 2015 the plaintiff filed applications for DIB and SSI Benefits.  (Tr. at 10.)  The plaintiff claimed she was disabled as a result of hypertension, diabetes, a cataract in her right eye, and low vision.  (*Id.* at 63.)  Ms. Johnson's disability onset date was June 1, 2014.  (*Id.* at 10.)  Plaintiff's application was denied initially on June 18, 2015. (*Id.* at 73.)

On July 15, 2015 plaintiff filed a written request for a hearing before an Administrative Law Judge ("ALJ").  (*Id.* at 78.)  On April 18, 2017, the ALJ, Mark Solomon, presided over

plaintiff's first hearing. (*Id.* at 22-32.) At the hearing, the ALJ told plaintiff that he was going to subpoena plaintiff's medical records from New York Methodist Hospital. (*Id.* at 29-31.) Because plaintiff did not have legal representation, she requested an adjournment for the purpose of acquiring an attorney. (Tr. at 26.) The ALJ granted the request. (*Id.* at 26-27.)

On August 8, 2017, ALJ Solomon presided over plaintiff's second hearing. (Tr. at 34-54.) During plaintiff's second hearing, Vocational Expert ("VE"), Dawn Blyth, testified. (Tr. 51-53.) When the ALJ asked Ms. Blyth the hypothetical question as to whether Ms. Johnson could perform past work as normally performed, Ms. Blyth responded in the affirmative. (Id. at 53.) In a decision dated September 23, 2017, the ALJ found plaintiff was not disabled. (*Id.* at 61.) On November 28, 2017, plaintiff appealed the ALJ's decision to the Appeals Council. (*Id.* at 163-167.) On January 1, 2019, the Appeals Council denied review of the decision, rendering the ALJ's decision the final decision of the Commissioner. (*Id.* at 1-3.) On January 17, 2019, plaintiff filed the instant action in federal court. (*See generally* ECF No. 1, Complaint ("Compl.").) On March 25, 2019, this court issued a scheduling order. (ECF No. 5, Scheduling Order.)

3

On August 14, 2019, the plaintiff filed a motion for extension of time to file her motion for judgment on the pleadings. (ECF No. 10, Letter Motion for Extension of Time to File.) On August 15, 2019, the court granted the plaintiff's motion and amended the scheduling order. (Dkt. Order dated 8/15/2019.) on September 25, 2019, the plaintiff filed another motion for extension of time to file her motion for judgment on the pleadings. (ECF No. 11, Letter Motion for Extension of Time to File.) On September 26, 2019, the court granted the plaintiff's motion and amended the scheduling order. (Dkt. Order dated 9/26/2019.)

On December 2, 2019, the defendant filed a motion for an extension of time to file the Commissioner's cross-motion. (ECF No. 12, Letter Motion for Extension of Time to File.) The court granted the motion that same day. (Dkt. Order dated 12/2/2019.)

On February 20, 2020, plaintiff filed her notice of motion and memorandum of law in support of plaintiff's motion for judgment on the pleadings. (ECF Nos. 14 and 15.) On that same day, defendant filed his cross-motion and memorandum of law in support of defendant's cross-motion for judgment on the pleadings and in opposition of plaintiff's motion for judgment on the pleadings. (ECF Nos. 16 and 17.) Later that same day, plaintiff filed her reply memorandum of law. (ECF No. 18.)

4

## **LEGAL STANDARD**

Unsuccessful claimants for disability benefits under the Act may bring an action in federal district court seeking judicial review of the Commissioner's denial of their benefits "within sixty days after the mailing . . . of notice of such decision or within such further time as the Commissioner of Social Security may allow." 42 U.S.C. §§ 405(g), 1383(c)(3). A district court, reviewing the final determination of the Commissioner, must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *See Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir. 1998).

A district court may set aside the Commissioner's decision only if the factual findings are not supported by substantial evidence or if the decision is based on legal error. *Burgess v. Astrue,* 537 F.3d 117, 127 (2d Cir. 2008). "Substantial evidence is more than a mere scintilla," and must be relevant evidence that a "reasonable mind might accept as adequate to support a conclusion." *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (citing *Richardson v. Perales*, 420 U.S. 389, 401 (1971)) (internal quotation marks omitted). If there is substantial evidence in the record to support the Commissioner's factual findings, those findings must be upheld. 42 U.S.C. § 405(g). Inquiry into legal error "requires the

5

court to ask whether 'the claimant has had a full hearing under the [Commissioner's] regulations and in accordance with the beneficent purposes of the [Social Security] Act.'" *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009). The reviewing court does not have the authority to conduct a *de novo* review, and may not substitute its own judgment for that of the ALJ, even when it might have justifiably reached a different result. *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012).

To receive disability benefits, claimants must be "disabled" within the meaning of the Act. *See* 42 U.S.C. §§ 423(a), (d). A claimant is disabled under the Act when she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Shaw v. Chater*, 221 F.3d 126, 131–32 (2d Cir. 2000). The impairment must be of "such severity" that the claimant is unable to do his previous work or engage in any other kind of substantial gainful work. 42 U.S.C. § 423(d)(2)(A). "The Commissioner must consider the following in determining a claimant's entitlement to benefits: '(1) the objective medical facts [and clinical findings]; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability . . . ; and (4) the claimant's educational

6

background, age, and work experience.'" *Balodis v. Leavitt*, 704 F. Supp. 2d 255, 262 (E.D.N.Y. 2001) (quoting *Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999)).

Pursuant to regulations promulgated by the Commissioner, a five-step sequential evaluation process is used to determine whether the claimant's condition meets the Act's definition of disability. *See* 20 C.F.R. § 404.1520. This process is essentially as follows:

> [I]f the Commissioner determines (1) that the claimant is not working, (2) that he has a 'severe impairment,' (3) that the impairment is not one [listed in Appendix 1 of the regulations] that conclusively requires a determination of disability, and (4) that the claimant is not capable of continuing in his prior type of work, the Commissioner must find him disabled if (5) there is not another type of work the claimant can do.

*Burgess*, 537 F.3d at 120 (internal quotation marks and citation omitted); *see also* 20 C.F.R. § 404.152(a)(4).

During this five-step process, the Commissioner must consider whether "the combined effect of any such impairment . . . would be of sufficient severity to establish eligibility for Social Security benefits." 20 C.F.R. § 404.1523. Further, if the Commissioner does find a combination of impairments, the combined impact of the impairments, including those that are not severe (as defined by the regulations), will be considered in the determination process. 20 C.F.R. § 416.945(a)(2). In steps one through four of the sequential five-step framework, the

7

claimant bears the "general burden of proving . . . disability." *Burgess*, 537 F.3d at 128. At step five, the burden shifts from the claimant to the Commissioner, requiring that the Commissioner show that, in light of the claimant's RFC, age, education, and work experience, the claimant is "able to engage in gainful employment within the national economy." *Sobolewski v. Apfel*, 985 F. Supp. 300, 310 (E.D.N.Y. 1997).

Lastly, federal regulations explicitly authorize a court, when reviewing decisions of the SSA, to order further proceedings when appropriate. "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is warranted where "there are gaps in the administrative record or the ALJ has applied an improper legal standard." *Rosa v. Callahan*, 168 F.3d 72, 82-83 (2d Cir. 1999) (quoting *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996) (internal quotation marks omitted). Remand is particularly appropriate where further findings or explanation will clarify the rationale for the ALJ's decision. *Pratts*, 94 F.3d at 39. However, if the record before the court provides "persuasive proof of disability and a remand for further evidentiary proceedings would serve no purpose," the court may reverse and remand solely for the calculation and

8

payment of benefits.  *See, e.g.*, *Parker v. Harris,* 626 F.2d 225, 235 (2d Cir. 1980); *Kane v. Astrue*, 942 F. Supp. 2d 301, 314 (E.D.N.Y. 2013).

## DISCUSSION

**I. The ALJ's Disability Determination**

Using the five-step sequential process to determine whether a claimant is disabled as mandated by the regulations, the ALJ determined at step one that the plaintiff had not engaged in substantial gainful activity since June 1, 2014, the alleged onset date of her disabilities.  (Tr. at 12.)  At step two, the ALJ found that plaintiff suffered from severe impairments of non-insulin dependent diabetes mellitus and diabetic neuropathy.  (*Id.*)  The ALJ determined that plaintiff's alleged disabilities of hypertension, low-density lipids, and poor vision due to a history of cataracts in both eyes and glaucoma, were non-severe based on the evidence in the record, which indicated that these impairments only minimally impacted claimant's ability to perform basic work tasks.  (*Id.* at 13.)

At step three, the ALJ determined that Ms. Johnson did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, or 416.926).  (*Id.* at 14.)

9

At step four, the ALJ found that plaintiff had the Residual Functional Capacity ("RFC") to perform the full range of light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b). (*Id.*) As part of his assessment, the ALJ considered that the record substantiated some diabetes-related limitations, including treatment reports indicating "tingling and numbness in both hands and feet," as well "uncontrolled neuropathy with pain and numbness in lower extremity." (*Id.* at 14-15.) Additionally, the ALJ opined that while the plaintiff's June 13, 2015 consultative report with Dr. Shannon Gearheart revealed some limited range of motion in the lumbar spine, the same exam and other exams showed that plaintiff's gait was normal, and had full strength in her upper and lower extremities. (*Id.* at 15.) The ALJ gave Dr. Meisel's opinion as to the plaintiff's physical limitations "partial weight," opining that the onetime exam in conjunction with treatment records from Kings County Hospital did not indicate physical limitation or a need for an assistive device. (*Id.* at 16.) Notably, the ALJ "attempted to obtain records from NY Methodist, but received no response to the records request."

The ALJ concluded that because the plaintiff's neuropathy-related limitations appeared to be controlled by medication, she retained the RFC to perform light work. (*Id.*) The ALJ concluded that plaintiff's impairments "could be

10

expected to produce the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence . . .." (*Id.*)

At step five, the ALJ found that plaintiff was capable of performing her past work as a medical secretary. The vocational expert testified that plaintiff could "still be able to perform said job if limited to sedentary work." (Tr. 16.) Thus, the ALJ concluded that plaintiff was not disabled within the meaning of the Act, as defined in 20 C.F.R. § 404.1520(f) and 20 C.F.R. § 416.920(f), since June 1, 2014, through the date of the hearing. (*Id.*)

## II. The ALJ Failed to Fully Develop the Record

Plaintiff argues that at the April 18, 2017 hearing, in her *pro se* capacity, she testified that she was treated at New York Methodist Hospital for her gait, numbness in her hands, and occupational therapy. (Pl. Memo. at 9-10.) The ALJ told Ms. Johnson at the hearing that he would subpoena the medical records from New York Methodist Hospital; however, the transcript is devoid of any such records. (Tr. at 29-31.) Ms. Johnson also alleges that the ALJ made no effort to procure medical records from Dr. Amy Zarrin at the Neuro Clinic. *Id*. Ms. Johnson went to Dr. Zarrin for treatment of her foot pain and numbness in her hands. (Tr. 211.) Plaintiff alleges that

11

because the ALJ failed to develop the administrative record, remand for a new hearing is proper.  (Pl. Memo. at 10; citing *Rosa v. Callahan*, 168 F.3d 72, 80-81, 83 (2d Cir. 1999).)

In response, the Commissioner argues that the Social Security Administration properly requested the relevant medical evidence and the ALJ then subpoenaed for records from New York Methodist Hospital.  (ECF No. 17, Def. Mem. At 9-10.)  The Commissioner also notes that the request for records from Dr. Zarrin at the Neuro Clinic was encompassed in the original request for records and subpoena because the Neuro Clinic is located at New York-Presbyterian Brooklyn Methodist Hospital Campus.  *Id.*

"Where the claimant appears *pro se*, the ALJ has an affirmative 'duty...to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts.'" *Jasmin v. Callahan*, No. 97 Civ. 2429(SS), 1998 WL 74290, at *4 (S.D.N.Y. Feb. 20, 1998) (quoting *Hankerson v. Harris*, 636 F.2d 893, 895 (2d Cir.1980)).  "To assist the ALJ in developing the record, the SSA's regulations authorize the ALJ to issue subpoenas for documents that are 'material to an issue at the hearing' when 'it is reasonably necessary for the full presentation of a case.'"  *Thurman v. Comm'r of Soc. Sec.*, No. 17-CV-474-FPG, 2018 WL 4940726, at *4 (W.D.N.Y. Oct. 12, 2018) (citing 20 C.F.R. §§ 404.950(d), 416.1450(d)).

12

An ALJ has discretionary power in issuing and enforcing subpoenas. *Serrano v. Barnhart*, No. 02 CIV. 6372 (LAP), 2005 WL 3018256, at *4 (S.D.N.Y. Nov. 10, 2005). In *pro se* proceedings such as the this, "the ALJ's affirmative duty requires not only requesting reports from treating physicians, but mak[ing] every reasonable effort to obtain ... a report that sets forth the opinion of that treating physician as to the existence, the nature and the severity of the claimed disability." *Villarreal v. Colvin*, No. 13-CV-6253, 2015 WL 6759503, at *21 (S.D.N.Y. Nov. 5, 2015) (citations omitted). If a subpoena is disregarded, an ALJ may seek to have the subpoena enforced, they can suggest that the plaintiff obtain the records, or they may suggest to the plaintiff that they can call relevant medical sources as witnesses at the hearing. *Carroll v. Sec'y of Dep't of Health & Human Servs. of U.S.*, 872 F. Supp. 1200, 1204 (E.D.N.Y. 1995) (remanding the case for further proceedings so that the ALJ can apply enforcement of a subpoena). Additionally, in response to unanswered subpoenas, it may be necessary for the ALJ to inform the claimant that the record is incomplete and "suggest that [they] produce additional medical evidence or call [their treating physician] as a witness." *Emerick v. Saul*, No. 19-CV-2826, 2020 WL 4504638, at *3 (E.D.N.Y. Aug. 5, 2020) (quoting *Carroll*, 872 F. Supp. at 1204.)

The Commissioner contends that the ALJ fulfilled his duty to develop the record by issuing a subpoena to New York Methodist Hospital. (ECF No. 17, Def. Mem. At 9-10.) However, the ALJ did not take steps to enforce the subpoena or give the plaintiff notice that the record was incomplete. *See Emerick v. Saul*, No. 19-CV-2826, 2020 WL 4504638, at *3 (E.D.N.Y. Aug. 5, 2020). In his decision, the ALJ noted that there was an attempt to obtain records from New York Methodist Hospital, but received no response, opining "the claimant's allegations are not substantially supported by treatment notes (particularly the extensive records from Kings County Hospital-Exhibit 5F)." (*Id.* at 15-16.) It does not appear throughout the record that the ALJ informed the plaintiff that he was unable to gain access to plaintiff's New York Methodist records save for the ALJ's rationale as to his decision on plaintiff's DIB claims. Because plaintiff was never notified during her *pro se* hearing that she could request medical records from New York Methodist Hospital or request treating sources to testify in lieu of the ALJ's failure to enforce his April 17, 2017 subpoena, remand is warranted.

**III. The ALJ Provided an Improper Hypothetical to the Vocational Expert**

The ALJ also erred by presenting a hypothetical to the testifying vocational expert that presumed that plaintiff was

14

able to "perform the full range of medium, light or sedentary work." (Tr. at 52.)

At the last step of the disability determination, the Commissioner has the burden to prove that plaintiff is capable of performing other jobs existing in significant numbers in the national economy in light of plaintiff's RFC, age, education, and past relevant work. 20 C.F.R. §§ 416.920, 416.960. In relying on a vocational expert's testimony to satisfy this burden, posing a "hypothetical question that does not present the full extent of a claimant's impairments cannot provide a sound basis for vocational expert testimony." *Gray v. Astrue*, 2009 WL 790942, at *14 (N.D.N.Y. Mar. 20, 2009); *see also De Leon v. Sec'y of Health & Human Servs.*, 734 F.2d 930, 936 (2d Cir. 1984) ("In positing hypothetical questions to the vocational consultant," the ALJ must "present the full extent of [the claimant's] disabilities.").

In this case, the ALJ posed hypothetical questions to the vocational expert that were based on the premise that the hypothetical claimant could perform "medium, light, or sedentary work." (Tr. at 52 ("Now, assuming I find the claimant can perform the full range of medium, light or sedentary work, she'd be able to do her past work, is that correct?").) Plaintiff alleges that the hypothetical "conformed to [the ALJ's] flawed RFC determination . . . which

15

did not include Ms. Johnson's hand limitations." (Pl. Memo. at 10.)

"In order to rely on a vocational expert's opinion: 'the hypothetical question posed to a vocational expert must fully set forth a claimant's impairments.'") (quoting *Totz v. Sullivan*, 961 F.2d 727, 730 (8th Cir.1992)). The ALJ's presumption that plaintiff could perform "medium, light, or sedentary work" did not fully account for all of plaintiff's limitations since the ALJ failed to acquire medical records from New York Methodist Hospital. These records would have shed additional light on plaintiff's limitations, specifically plaintiff's occupational therapy treatment for pain in her hands (*see* Tr. at 30), and treatment for Ms. Johnson's "foot pain and numbness of hand" (*see* Tr. at 211) due to her diabetes.

The court recognizes that, later in the hypothetical, the ALJ did note plaintiff's inability to "perform jobs requiring frequent near or far acuity." (*See* Tr. at 53.) The court, however, cannot find that the vocational expert's testimony provided substantial support for the ultimate conclusion that plaintiff could perform certain kinds of work, because it was based on a hypothetical premised on the unsupported assumption that plaintiff could perform "medium, light, or sedentary work." The ALJ should have enforced the

subpoena for medical records and/or informed plaintiff that she also could request medical records from New York Methodist Hospital to fully develop the record.

**IV.  The ALJ's Evaluation of Ms. Johnson's Obesity**

Plaintiff argues that the ALJ failed to properly assess the significant effect of Ms. Johnson's obesity on her abilities.  (Pl. Memo at 11.)  Defendant is ordered to consider whether plaintiff's claimed obesity affects her abilities.  However, the Court need not address this argument as the action must be remanded for the reasons set forth above.

## CONCLUSION

Federal regulations explicitly authorize a court, when reviewing decisions of the SSA, to order further proceedings when appropriate.  "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).  Remand is particularly appropriate where further findings or explanation will clarify the rationale for the ALJ's decision. *Pratts*, 94 F.3d at 39.

Because the Court finds that the ALJ failed to enforce the April 18, 2017 subpoena to New York Methodist Hospital or inform *pro se* plaintiff of her options as to

17

requesting the documents or calling her physician to testify, remand is warranted.  Defendant is also ordered to consider whether plaintiff's claimed obesity affects her abilities.  Accordingly, plaintiff's motion for judgment on the pleadings is GRANTED, defendant's cross-motion for judgment on the pleadings is DENIED, and the case is REMANDED for further proceedings consistent with this Memorandum and Order.  The Clerk of Court is respectfully directed to enter judgment in favor of plaintiff.

**SO ORDERED.**

DATED: January 29, 2021
       Brooklyn, New York

⎯⎯⎯⎯⎯⎯⎯⎯⎯/s/⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
**HON. KIYO A. MATSUMOTO**
United States District Judge